# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| |
|---|
| ITALO ANTHONY MICELI,<br>    *Plaintiff*,<br><br>    v.<br><br>JOHN MEHR *et al.*,<br>    *Defendants*. |

No. 3:17-cv-00029 (VAB)

**RULING AND ORDER ON PENDING DISCOVERY MATTERS**

Italo Anthony Miceli ("Plaintiff") has sued the Town of Rocky Hill ("Rocky Hill") and its Town Manager John Mehr; Town Manager Guy Schiafe; Chief of Police Michael D. Custer; Robert Lombardo (collectively "Town Defendants"); and Police Lieutenant Robert Catania ("Individual Defendant") under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and 42 U.S.C. § 1983, alleging violations of the First Amendment to the United States Constitution. He also brings claims under the Connecticut State Constitution and the Connecticut Fair Employment Practices Act, Conn. Gen. Sec. § 46a-60(a) and alleges intentional infliction of emotional distress, defamation, and tortious interference at common law.

Intervenor Daigle has moved to quash a third-party subpoena Mr. Miceli served on him. Mr. Miceli has moved to compel the production of discovery, and in response, Intervenor Daigle has moved for a protective order. Finally, Mr. Micheli has moved for a status conference.

For the following reasons, the motion to compel is **DENIED**. The motion to quash is **GRANTED**. The motions for a protective order and for a status conference are **DENIED** as moot.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Miceli alleges that Defendants have engaged in systemic discrimination based upon a perceived mental disability and alleged retaliation for engaging in protected conduct while he was employed by Rocky Hill. Compl. ¶ 12. The relevant facts, as alleged in the Complaint, are as follows.

### A.  Factual Allegations

Mr. Miceli alleges that, in October 2014, Mr. Sciafe, the newly appointed Town Manager, began what was to become a pattern of harassment and discrimination, based on alleged false complaints against Mr. Miceli made by Mr. Lombard. Compl. ¶ 19. Mr. Miceli alleges that Mr. Lombardo and Mr. Catania initiated, based on "false information," *id.* ¶ 25, a "campaign of slander and false complaints" that Defendants used to harass and intimidate Mr. Miceli based upon their alleged perception that he suffered from post-traumatic stress disorder ("PTSD"). *Id.* ¶¶ 20–21.

In June 2015, Mr. Miceli alleges that he made a complaint to the State of Connecticut Chief State's Attorney regarding Mrs. Sciafe, Catania, and Lombardo. *Id.* ¶ 23. In December 2015, he filed a complaint with the Connecticut Commission on Human Rights and Opportunities. *Id.* ¶ 28. After making both complaints, Mr. Miceli alleges that he was unduly suspended from work and the subject of various internal investigations in retaliation for complaining of Defendants' conduct. *Id.* ¶¶ 24–27, 29–35.

Mr. Miceli alleges he was unlawfully terminated in November 2016. *Id.* ¶ 36.

### B.  Procedural Background

The current discovery dispute arises from Mr. Miceli's request for exhibits relating to an internal affairs investigation Rocky Hill conducted into alleged misconduct by Mr. Cantania.

On September 19, 2016, the Rocky Hill contracted with Eric Daigle and Daigle Law Group, LLC, to conduct an internal affairs investigation of Mr. Robert Catania for alleged misconduct in his handling of Rocky Hill Internal Affairs Investigation #16-11, as well as claims of sexual harassment and a hostile work environment, to determine if there existed a violation of Rocky Hill Police Department policy and procedure ("Rocky Hill Police Department Internal Affairs investigation #16-12" or "Report"). Mot. to Quash at 3, ECF No. 80. Mr. Daigle's investigation included an analysis and review of Rocky Hill Police Department documentation and taking statements of parties and witnesses, and Mr. Daigle represents that the investigation was never concluded due to Mr. Catania's retirement. *Id.*

Before the conclusion of the investigation, however, Mr. Daigle allegedly produced a "draft" Report to the Rocky Hill Police Department. *Id.*

Mr. Miceli's request for documents, paragraph four seeks:

> All documents including but not limited to emails, texts, phone messages or telephone messages, reports or any other writings whether electronic or otherwise concerning any discipline and/or internal affairs or professional standards investigations of any defendant.

Pl.'s Br. at 5, ECF No. 94-1. Paragraph twelve seeks:

> [a]ll documents including but not limited to emails, texts, phone messages, reports or any other writing whether electronic or otherwise between Attorney Eric Daigle and the defendants 2007 to present.

*Id.*

In January 2018, Mr. Miceli deposed Mr. Daigle as both a fact and expert witness. *Id.* at 6. In March 2018, Mr. Miceli deposed Mr. Mehr and learned that Mr. Daigle had conducted an internal affairs investigation of Mr. Catania. *Id.* at 7.

In early April 2018, Town Defendants produced the draft Report consistent with Mr. Miceli's discovery requests, although Town Defendants withheld the Report's exhibits as subject to privilege. Town Defs.' Opp'n Br. at 6. ECF No. 101. The draft Report includes within it a list of the evidence and documents, *i.e.*, the raw material, used to compile the draft Report. Report at 46–47, ECF No. 94-2. The list enumerates each exhibit and adheres to the general format of: Exhibit [Letter] [Name of Individual] [short description of the document's contents] [date]. *Id.* In total, there are twenty-four exhibits. *Id.*

Mr. Miceli later served Mr. Daigle with a subpoena seeking to depose him for a second time and demanding the production of documents from Rocky Hill Police Department Internal Affairs investigation #16-12. *Id.* Specifically, the subpoena demands production of "[a]ll documents, electronic or otherwise regarding your investigation of Rocky Hill Police Lieutenant Robert Catania, including but not limited to Internal Affairs Investigation 16-12, exhibits, statements, and any other evidence." ECF No. 80-3.

The Court permitted Mr. Daigle to intervene in this matter for the limited purpose of litigating issues related to this third-party subpoena. ECF No. 91. He has moved to quash. ECF No. 80.

Mr. Miceli then moved to compel all exhibits and related documents from Rocky Hill Police Department Internal Affairs investigation #16-12. ECF No. 94. In response, Mr. Daigle moved for a protective order. ECF No. 97.

## II. STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015

Amendments. Even after the 2015 amendments, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (citing *State Farm Mutual Automobile Insurance Co. v. Fayda*, No. 14 Civ. 9792, 2015 WL 7871037 (S.D.N.Y. Dec. 12, 2015)), at *2.

Moreover, the district court has "wide latitude to determine the scope of discovery." *In Re Agent Orange Product Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008); *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion."). "The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive." *Klein v. AIG Trading Group Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal citations and quotation marks omitted).

If a party fails to produce documents as requested under Rule 34 of the Federal Rules, the party seeking discovery may move for an order compelling production. Fed. R. Civ. P. 37(a)(3).

Under Federal Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Where the discovery sought is relevant, the party seeking protection bears the burden of showing that good cause exists to grant the motion. *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981) (citations omitted); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (citation omitted). Rule 26(b)(1)'s relevance standard governs also a subpoena issued to a non-party under Rule 45. *Warnke v. CVS Corp.*, 265 F.R.D.

5

64, 66 (E.D.N.Y. 2010) (citing *During v. City Univ. of New York*, No. 05 CIV. 6992(RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006) (listing cases).

**III.    DISCUSSION**

Mr. Miceli has moved to compel production of the draft Report, consistent with discovery requests four and twelve, arguing that he is entitled to the documents on three related grounds. First, he argues that the subject matter of the Report "involve[s] Catania's abuse and misuse of his position" that parallel the allegations at issue here. Pl.'s Br. at 9. Second, he maintains that the credibility of "all witnesses" is relevant, and he cannot use Mr. Daigle's statements to test the credibility of witnesses. Pl.'s Br. at 12. Third, and finally, Mr. Miceli asserts that the draft Report's exhibits are probative of whether other, similarly situated officers, were treated differently than Mr. Miceli. *Id.* at 13. Defendants argue that the exhibits are irrelevant and disproportionate to the needs of the case. Catania Opp'n Br. at 3; Town Defendants Opp'n Br. at 3. The Court agrees.

Information as to discipline, termination, or resignation in lieu of termination of other employees is relevant to Mr. Miceli's discrimination claim. *Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 291 (D. Conn. 2007) (finding that records of other management level employees during the five years preceding the plaintiff's termination were relevant to the plaintiff's discrimination claim); *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 71 (D. Conn. 2004) (citations omitted) ("Evidence of general patterns of discrimination by an employer is clearly relevant in an individual disparate treatment case, and is therefore discoverable pursuant to Fed. R. Civ. P. 26(b)(1)). This evidence may support an inference that Defendants acted with a discriminatory and retaliatory motive and that Defendants' stated reasons for making the employment decision are pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

6

(1973) (as applied to claims under ADEA, the FMLA and the CFEPA). This inference is material to analyzing discrimination as well as retaliation. *Chamberlain*, 247 F.R.D. at 291 (citing *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991) ("[I]nference of discrimination may be shown by direct evidence, statistical evidence, or circumstantial evidence . . . .")).

This, however, is an argument for why the draft Report, which already has been produced, is discoverable and not necessarily its exhibits. This disclosure satisfies the needs of the case. *See Chamberlain*, 247 F.R.D. at 291 (discussing the sufficiency of a list of employees who were promoted, hired, and terminated as well as those who took FMLA leave as sufficient for purposes of discovering evidence of a pattern of practice of discrimination).

The exhibits to the investigation at issue consist of interview transcripts, notes, memoranda, and several other types of documents Mr. Daigle created during the course of investigating the claims against Mr. Catania. Significantly, none of the other individual defendants in this case, Schiafe, Custer, and Lombardo, are identified in or were even interviewed for the Report. *See* Town Defs.' Br. at 4, ECF No. 101. As a result, despite Mr. Miceli's claims, the Report is of limited utility to this case. Indeed, given its limited utility, Mr. Miceli's perceived need to replicate the draft Report in its entirety, by having access to any and all information related to it, is unsustainable. *See, e.g.*, *Metcalf v. Yale Univ.*, No. 15-CV1696 (VAB), 2017 WL 6614255, at *3 (D. Conn. Dec. 27, 2017) (finding that the medical records of an employee who was not a decision maker but with whom the ultimate decision maker spoke and, in part, based the decision to terminate the plaintiff, were disproportionate to the needs of the case); *Williams v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-cv-673 (RNC), 2016 WL 4083598, at *4 (D. Conn. Feb. 16, 2016) (finding that the testimony that plaintiff seeks to obtain was disproportionate to the needs of the case because the plaintiff had not made a "specific

proffer" of the testimony that would aid in the resolution of the case, the depositions appeared of marginal utility, and that the cost of preparing for and taking the depositions were incongruous with the potential recovery in damages).

For example, Mr. Miceli's argument that contemporaneous notes of third-party interview notes, and other exhibits of the draft Report are necessary to depose Mr. Catania is specious, at best. The reason is simple: the sheer volume of the draft Report. The draft Report not only readily discloses the factual circumstances and dates of the underlying events and the names of those involved, but also summarizes their testimony. Given its specificity, the draft Report has provided Mr. Miclei with all the information necessary to prepare for Mr. Catania's deposition, to the extent there are legitimate issues related to this lawsuit from the draft Report.[1] *Cf. Pinks v. M&T Bank Corp.*, No. 13-cv-1730 (LAK) (RLE), 2016 WL 1216813, at *3 (S.D.N.Y. Mar. 25, 2016) (finding that the defendant had already identified the number of accounts and the number of states in which deficiency accounts existed and therefore the plaintiffs demand that the plaintiff identify the disposition of every account in every state was disproportionate to the needs of the case).

Mr. Miceli also argues that the exhibits are relevant as comparator evidence. Here, the Court is unpersuaded by this argument as well. Mr. Daigle consulted four Rocky Hill employee witnesses who had been disciplined for workplace misconduct. The four—three sworn Rocky

---

[1] At this juncture, given Mr. Miceli's overinclusive approach to this motion to compel, the Court cannot indicate one way or the other whether further discovery related to this draft Report is proportional to the needs of this case, as Rule 26 requires. "In his 2015 Year–End Report, United States Supreme Court Chief Justice John Roberts discussed the December 1, 2015 amendment to Rule 26(b), stating that the amended rule requires lawyers to 'size and shape their discovery requests to the requisites of a case. Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery.'" *Williams*, 2016 WL 4083598, at *3 (citation omitted)).

Hill police department employees and one civilian records clerk—admitted possessing and consuming alcohol within Town-owned buildings. Report at 3. Town Defendants have conceded that none of the four were terminated.

The civilian records clerk is not similarly situated in all material respects and thus the request is irrelevant to Mr. Miceli's discrimination claim. *See Berube v. Great Atl. & Pac. Tea Co.*, 348 Fed. App'x 684, 686 (2d Cir. 2009) (requiring a showing of "subject to the same workplace standards" (quoting *Graham*, 230 F.3d at 40)). Assuming that the three sworn Rocky Hill personnel were subject to the same workplace standards as Mr. Miceli, their employment and disciplinary records would be relevant to Mr. Miceli claims, not the underlying documents to an internal affairs investigation regarding whether Mr. Catania failed to properly conduct an internal affairs investigation into these employees' misconduct. *See Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 291 (D. Conn. 2007) (finding as relevant comparator evidence testimony from a corporate representative as to information the evaluations, medical and disciplinary history of certain other employees or any documents containing such information for purpose); *see also Berube*, 348 Fed. App'x at 686 (requiring "discipline was of comparable seriousness" (quoting *Graham*, 230 F.3d at 40)). If not irrelevant, the tenuousness of this request to the needs of Mr. Miceli's case needs no further elaboration.

Similarly, Mr. Catania, as a lieutenant with supervisory duties, is not similarly situated to Mr. Miceli, an officer, in all material respects. *See Berube*, 348 Fed. App'x at 686 (requiring a showing of "subject to the same workplace standards"). Even if the two were similarly situated, and they are not, the exhibits are irrelevant as comparator evidence because the investigation and report were never concluded due to Mr. Catania's retirement and therefore cannot support an inference of discriminatory or retaliatory intent or pretext. *See Taggart*, 924 F.2d at 46

("[I]nference of discrimination may be shown by direct evidence, statistical evidence, or circumstantial evidence . . . .").

Having taken into consideration factors including "the parties' relative access to relevant information" and "the importance of the discovery in resolving the issues," the discovery Mr. Miceli seeks is insufficiently related to any of his claims or defenses, and where not irrelevant, it is disproportional to the value of the requested information and the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court therefore will deny the motion to compel, and, for the same reasons, grant the motion to quash. Accordingly, the motion for a protective order and for a status conference are moot.[2]

## IV. CONCLUSION

For the reasons discussed above, the motion to compel is **DENIED**. The motion to quash is **GRANTED**. The motions for a protective order and for a status conference are **DENIED** as moot.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of August, 2018.

          /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[2] The Court considered, but has decided to reject the request for attorney's fees, in conjunction with the denial of the motion to compel. "A failed motion is 'substantially justified' in this context if it 'raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule.'" *Wenc v. New London Bd. of Educ.*, No. 3:14-cv-0840 (VAB), 2016 WL 4203371, at *1 (D. Conn. Aug. 9, 2016) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); 8B Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 2288 (3d ed. 2016)). While Mr. Miceli's arguments were found to be wanting, they were colorable enough to avoid the imposition of attorney's fees as a sanction under Rule 37. The Court does urge Mr. Miceli to avoid further prolonging an already unnecessarily protracted discovery process.